RICHARD H. BENSON

*v.*

AUBREY ROBERTSON, *et al., Commissioners, County Court,*
*Braxton County, etc.; et al.*

(No. 13722)

Decided July 13, 1976.

*Cardot & Kent, Richard W. Cardot, William J. Oates, Jr., Warren R. McGraw* for relator.

*William W. Talbott* for Nancy C. Gillespie, Clerk, County Court of Webster County.

WILSON, JUSTICE:

This is an original proceeding in mandamus in which the petitioner, Richard H. Benson, a resident of Randolph County and a Democratic candidate for the office of State Senator from the Twelfth Senatorial District consisting of Randolph, Pendleton, Pocahontas, Braxton, Webster and Nicholas Counties, seeks to have this Court require the respondent commissioners of the county commissions ex officio boards of canvassers of Braxton, Nicholas and Pocahontas Counties to certify the results of the Primary Election held on May 11, 1976, as publicly declared by them following the completion of the canvassing of the returns, even though D. P. Given, who was also a Democratic candidate for the office of State Senator from said District, allegedly demanded a recount in each of the counties involved.

We note that, although this relief was also originally sought against the commissioners of Webster County, Benson subsequently withdrew that request.

We note also that D. P. Given was made a party respondent in this proceeding, and even though he should not have been served with a rule to show cause, we find no objection to the procedure of joining Given in view of the fact that he is a real party in interest and his joinder would save delay attendant upon a petition to intervene, a consideration of any such petition and an order permitting his intervention. *See, State ex rel. Maloney v. McCartney*, _____ W. Va. _____, 223 S.E.2d 607 (1976).

The record shows that Given and the other respondents failed to file any responsive pleading under Rule XVIII, Section 4 of the Rules of Practice in the Supreme Court of Appeals.

As a consequence of this failure on the part of all respondents, including Given, and under generally recognized and accepted rules of pleading, we accept as true all material and undenied allegations of Benson's verified petition. *See, State ex rel. Wiley v. State Road Commission*, 148 W. Va. 76, 133 S.E.2d 113 (1963); and *State ex rel. Fanning v. County Court of Mercer County*, 129 W. Va. 584, 41 S.E.2d 855 (1946).

Proceeding from that premise, the material and undenied factual allegations of the petition are, in summary form; that at the Primary Election of May 11, 1976, the qualified voters in Braxton, Nicholas and Pocahontas Counties cast their votes for the candidates standing for nomination for the office of State Senator; and thereafter a canvass of the votes cast in each of said counties was held and the results thereof declared; that Given, an opponent of Benson for said nomination, asked for a recount in said counties; that the commissioners of said counties were unmindful of their duties and of the requirements of *W. Va. Code*, 3-6-9, as amended in that proper notices of the dates, times and places of said

recounts were not served on Benson; and that nonetheless recounts were held in said counties.

From these material facts, Benson concludes that his rights were disregarded by a direct violation of *W. Va. Code*, 3-6-9, *as amended*, thereby denying him due process and equal protection under the Constitutions of the United States and the State of West Virginia.

There being no claim by Benson that there was any defect in the procedure followed by the respondent Given in demanding the recount in said counties, we will take it as established that Given complied with the statute in making his demand for recount and that Benson complains only of statutory violations by the commissioners in their failure to serve notice upon him pursuant to *W. Va. Code*, 3-6-9, *as amended*.

We are concerned by the failure of the parties to observe with particularity the requirements of Rule XVIII of the Rules of Practice in the Supreme Court of Appeals in invoking this Court's original jurisdiction. Even though we recognize that the public interest in open and fair elections may justify some departure from the traditional rules governing mandamus, *see, State ex rel. Maloney v. McCartney, supra,* at 616, we look with disfavor upon procedures which tend to defeat the orderly presentation of the issues to be resolved by this Court in the exercise of its original jurisdiction. We must call attention to the risks which are invited by any party who fails to observe and comply with the requirements of Rule XVIII.

It is clear that mandamus is the proper remedy in this State to compel any officer or person to perform any duty which he is required to perform under the election laws of this State. *W. Va. Code*, 3-1-45, *as amended, State ex. rel. Maloney v. McCartney, supra;* and *State ex rel. Chambers v. County Court of Logan County,* 145 W. Va. 581, 116 S.E.2d 125 (1960).

In this case, the petitioner Benson fails to show that he has a clear legal right to the specific relief which he

requests, and we must deny it. *See* Official Syllabus No. 3, *Vandevender v. Cassell,* _____ W. Va. _____, 208 S.E.2d 436 (1974). He asks that this Court compel the commissioners in the three counties involved to certify that the results of the disputed Primary Election are as declared in the canvass of the votes cast at such election. If we were to grant such relief as requested, we would effectively defeat the right of Given who, under the allegations of the petition which we take as true, properly requested recounts in compliance with *W. Va. Code,* 3-6-9, *as amended.*

However, in determining whether to grant or refuse a writ of mandamus either in its traditional form or in election matters, this Court must exercise its broad discretionary powers. *See, Pardue v. County Court of Lincoln County,* 105 W. Va. 235, 141 S.E. 874 (1928). In the exercise thereof, it will recognize that mandamus, although a remedy at law, is possessed of substantial equitable overtones. *See, United States ex rel. Greathouse v. Dern,* 289 U.S. 352, 77 L.Ed. 1250 (1933).

In this proceeding, the exercise of our equitable discretion requires a disposition of the case which will serve to protect the rights of Benson and Given equally.

We accept as true Benson's assertion that the commissioners in Braxton, Nicholas and Pocahontas Counties failed to serve him with notices in the manner required by *W. Va. Code,* 3-6-9, *as amended,* showing the dates, times and places of the commencement of the recounts, a fact which is not denied by any of the respondents.

Although it is apparent that the notice provisions of *W. Va. Code,* 3-6-9, *as amended,* are inartfully drawn, the Legislature, in amending and re-enacting Section 9, Article 6 of Chapter 3 of the Code of West Virginia, clearly intended to provide that when a request for a recount is made by one candidate, notice of the date, time and place of the commencement of the recount must be served on rival candidates. This was to remedy the abuses arising under the statute as it previously existed

in which no such notice or service thereof was required. *See, State ex rel. Daugherty v. County Court of Lincoln County,* 127 W. Va. 35, 44, 31 S.E.2d 321 (1944).

In this case, no such notice having been served on Benson, the statute was violated.

The statute further provides that the recount " . . . shall be set for no sooner than three days after the serving of said notice." Consequently, no notice having been served, no valid recount could have been held unless Benson waived the requirement of notice and service thereof by voluntarily being present in person or by some duly designated representative and participating, in any manner, without objection, in said recount procedure. The rationale of this view is expressed in Syllabus No. 1 in *Manypenny v. Graham,* 149 W. Va. 56, 138 S.E.2d 724 (1964):

> "The object of process is to cause a defendant to appear in court; and when a defendant has made a general appearance the function of process has been accomplished and he can not voluntarily appear without objection and waive his right to answer a petition and then take advantage of the absence of the issuance of process against him.

In order to do justice to all concerned and to eliminate confusion which might result from the language of the notice and service provisions in the statute, we must endeavor to construe the statute, if possible, to give effect to the intention of the Legislature. *See, Vest v. Cobb,* 138 W. Va. 660, 684–85, 76 S.E.2d 885 (1953).

The statute provides that, within a period of 48 hours after the commissioners of the county commission in their ex officio capacity as a board of canvassers have publicly declared the results of an election following the canvassing of the returns of the election, a candidate may demand a recount and shall furnish bond as required by statute. In such event, the board has an additional 24 hours after the end of the 48-hour period in which to " . . . send notice to all candidates who filed for

the office in which a recount has been demanded, of the date, time and place where the board will convene to commence the recount." The statute further provides that: "Said recount shall be set for no sooner than three days after the serving of said notice."

The statute clearly contemplates that said notice shall be served, and this is the paramount consideration. It contemplates that it shall be served by a sheriff. The language "send notice to all candidates" does not mean that the statute contemplates two separate notices, one of which must be sent to the rival candidates and the other of which must be served on rival candidates. This language merely means that the notice must be delivered to the sheriff of the county in which the recount is to be held within 24 hours after the end of the 48-hour period.

The language of the statute with reference to service by the sheriff and the return which he must make is as follows:

> "Any sheriff of the county in which the recount is to occur, shall deliver a copy thereof in writing to such candidate in person; or if such candidate be not found, by delivering such copy at the usual place of abode of such candidate, and giving information of its purport, to the spouse of such candidate or any other person found there who is a member of his family and above the age of sixteen years; or if neither the spouse of such candidate nor any such other person be found there, and such candidate be not found, by leaving such copy posted at the front door of such place of abode. Any sheriff, thereto required, shall serve a notice within his county and make return of the manner and time of service . . . ."

This statutory language is not ambiguous when the county in which the recount is to occur is the same as the county in which the candidate to be served may be found or has a usual place of abode. However, in elections which involve more than one county, it may frequently happen that the candidate to be served may not

have a usual place of abode in the county in which the recount is to occur and may not be found within such county. Under such circumstances, the notice of the date, time and place where the board will convene to commence the recount should, as in the case of legal process, be directed to the sheriff of the county in which the candidate to be served has a usual place of abode and the sheriff of that county should then make service of said notice and return thereof as provided.

To interpret the statute in any other manner would either defeat the manifest intention of the Legislature or impose upon the sheriff of the county in which the recount was to be held an extraterritorial burden which would in many instances be absurd and almost impossible for him to discharge. *See, Richardson v. State Compensation Commissioner*, 137 W. Va. 819, 824, 74 S.E.2d 258 (1953).

The language of the statute which provides that the recount shall be set for no sooner than three days after the serving of said notice is no barrier to the proper preparation and delivery of such notice to a sheriff. It may mean in many instances that the recount cannot begin as expeditiously as some might think proper. However, as in other instances in our law in which notice of a hearing must be given, a reasonable estimate may be made as to the time within which it will take to serve the notice as required by this statute, and allowance can be made so as to provide that the recount will not commence sooner than three days after the service of the notice.

In accordance with our views regarding mandamus in election matters and in accordance with our interpretation of the notice and service provisions of *W. Va. Code*, 3-6-9, *as amended*, and unless Richard H. Benson previously waived notice by voluntarily being present either in person or by a duly designated representative and participating, in any manner, without objection, in any recount procedure previously held in any of said counties, we direct the issuance of a writ of mandamus com-

pelling the commissioners of the county commissions ex officio boards of canvassers of Braxton, Nicholas and Pocahontas Counties to prepare and deliver to the sheriff of their respective counties a notice of the date, time and place of the commencement of a recount of the ballots cast in the Primary Election of May 11, 1976, for the Democratic candidates for the office of State Senator from the Twelfth Senatorial District, directed to the sheriff of Randolph County, the usual place of abode of the petitioner, Richard H. Benson, for service upon him by the sheriff of Randolph County as provided by statute; said recount in said counties to commence not sooner than three days from the date of the service of notice upon Richard H. Benson.

*Writ awarded.*